UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-23879-WILLIAMS/MCALILEY

FRANK PULIDO and
MARTHA PULIDO, his spouse

    Plaintiffs,

vs.

THE PHOENIX INSURANCE COMPANY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON
<u>CROSS MOTIONS FOR SUMMARY JUDGMENT</u>**

Defendant The Phoenix Insurance Company has filed a Motion for Summary Judgment and Plaintiffs Frank Pulido and Martha Pulido filed a Motion for Partial Summary Judgment. (ECF Nos. 44, 46). The Honorable Kathleen M. Williams referred both Motions to me for a Report and Recommendation. (ECF No. 49). The Motions are fully briefed. (ECF Nos. 43, 48, 52-53, 55 through 59). For the reasons explained below, I recommend that the Court deny Defendant's Motion for Summary Judgment and grant in part Plaintiff's Motion for Partial Summary Judgment.

**I.    BACKGROUND**[1]

Phoenix issued a commercial insurance policy to FirstService Residential and its subsidiary, All Florida Pest Control for the period January 1, 2017 to January 1, 2018 (the

---

[1] The facts set forth herein are taken from the parties' respective Statements of Undisputed Material Facts, unless otherwise noted.

"Policy"). (ECF No. 43 at ¶1). Mr. Pulido was an employee of All Florida Pest Control during the Policy period. (ECF No. 48 at ¶ 2). On September 26, 2017, Mr. Pulido drove a pickup truck owed by All Florida Pest Control and insured by Phoenix (the "Truck") to a residential community to perform pest control services. (ECF No. 48 at ¶ 3). The bed of the Truck contained, among other things, a 100 gallon water tank, a 200 gallon water tank, a pump, and a hose reel system. (ECF Nos. 48 at ¶ 8; 55 at ¶8). The combined weight of the water tanks was over 2,000 pounds. (ECF No. 48 at ¶ 9). The hose was mounted to the Truck and had a sprayer attached to the other end to allow for the spraying of a water/chemical mix held in the tanks. (ECF No. 48 at ¶ 10). The hose reel system could be removed by taking off nuts and bolts "like a tire." (ECF No. 55 at ¶ 8).

A.    The Accident

As relevant here, Mr. Pulido parked the Truck on the side of the street and ran the hose over the bed of the Truck across the street into the backyard of one of the residences. (ECF No. 48 at ¶ 13). While Mr. Pulido was in the backyard of a residence spraying pesticide with the hose draped over his neck and shoulders, a motor vehicle drove over the hose. The hose was pulled by the vehicle, which pulled Mr. Pulido to the ground and caused him injuries. (ECF Nos. 43 at ¶¶ 5, 8; 48 at ¶ 12, 15). Mr. Pulido was standing 75 to 100 feet from the Truck when the accident occurred. (ECF No. 43 at ¶ 24).

There is no dispute that Mr. Pulido was "touching/utilizing/operating" the pesticide spraying equipment at the time of the accident and was acting within the course and scope of his employment. (ECF Nos. 43 at ¶ 4; 48 at ¶ 26; 55 at ¶¶ 15, 26). The parties do dispute how much time passed between when Mr. Pulido walked away from the Truck and when

he was injured. (ECF No. 55 at ¶ 52, *Defendant's Statement of Additional Undisputed Facts in Support of its Response to Plaintiffs' Motion for Partial Summary Judgment*) (co-worker testified that he thought "a good 30 to 40 minutes" passed from when Mr. Pulido parked the Truck to the time the accident occurred); (ECF No. 57, *Plaintiffs' Reply Statement of Material Facts* at ¶ 52) (Mr. Pulido testified that "probably about three minutes" elapsed from when he exited the Truck to when he felt he was "being jerked" by the hose). The motor vehicle that ran over the hose left the scene and could not be identified, nor could the driver or owner be located. (ECF No. 43 at ¶ 9).

B.  The Policy

The Policy contains Uninsured Motorist coverage as follows: "We [Phoenix] will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle'. The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident'." (ECF No. 43-1 at 38). The Policy further provides that if the insured is a "partnership, limited liability company, corporation or other form of organization" then "[a]nyone 'occupying' a covered 'auto'…" are "insureds." (*Id.*); (*see also* ECF No. 43 at ¶ 16). The Policy further defines "occupying" as "in, upon, getting in, on, out or off." (ECF No. 43-1 at 41). There is no dispute that the Truck itself is a "covered auto" within the meaning of the Policy. (ECF No. 43 at ¶ 18).

The parties agree that if Mr. Pulido was "occupying" the Truck at the time of the accident, then Plaintiffs were an "insured" under the Policy, (ECF No. 53 at ¶ 17), and whether he was occupying the Truck is the parties' central dispute. The answer turns on whether the hose he was holding was part of the Truck, as the Policy defines it.

To resolve that dispute, the Court must consider two other Policy provisions. First, the Policy defines an "auto" as "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads…However, 'auto' does not include 'mobile equipment'." (ECF No. 43-1 at 29). Next, the Policy definition of "mobile equipment" states that "self-propelled vehicles with the following types of *permanently attached* equipment are *not* 'mobile equipment' but *will* be considered 'autos'…[a]ir compressors, pumps and generators, including *spraying*…equipment." (ECF No. 43-1 at 30) (emphasis supplied).

C.   This Action

Before filing suit, Mr. Pulido filed a claim with Phoenix seeking Uninsured Motorists benefits for the injuries he sustained in the accident. (ECF No. 43-7). Phoenix denied coverage, stating:

> According to the information we have been provided, Mr. Pulido was not "occupying" a covered auto. He was not in the truck, on it, getting into or out of it. When the incident occurred, he had long ago ended the process of getting out of it. In fact, at the time of the accident, he was outside of the First Service truck, across the street and in a backyard or other residential area.

(*Id*.). Plaintiffs thereafter filed this suit for breach of the Policy, in which they claim entitlement to Uninsured Motorists benefits and damages for Mrs. Pulido's alleged loss of consortium. (ECF No. 22).

Phoenix now seeks summary judgment in its favor, arguing that Plaintiffs are not entitled to Uninsured Motorists coverage because Mr. Pulido was not "occupying" the Truck at the time he was injured and, therefore, Plaintiffs are not insureds under the Policy.

4

(ECF No. 44 at 5-15).[2] For their part, Plaintiffs seek partial summary judgment on two issues.[3] First, on the same issue that Phoenix raises, Plaintiffs seek summary judgment in their favor with the argument that Mr. Pulido was "occupying" the Truck, at the time of the accident, when he used the Truck's connected sprayer hose, and he thus met the Policy definition of an "insured" . (ECF No. 46 at 4-7). Second, Plaintiffs seek summary judgment in their favor on Phoenix's comparative fault affirmative defense. (*Id*. at 10-11).

Both parties agree that Florida law governs construction of the Policy. (ECF Nos. 46 at 5; 6 at 5).

As explained below, with respect to the issue of "insured" status, I conclude that the undisputed facts establish that the hose was permanently attached to the Truck and, thus, was part of the Truck as it was defined by the Policy. Mr. Pulido was therefore "occupying a covered auto" at the time of the accident because he was holding the hose when he was injured. This leads to the conclusion Plaintiffs are insureds within the terms of the Policy. With respect to Phoenix's comparative fault affirmative defense, there are genuine issues of material fact that prevent summary judgment.

---

[2] Phoenix asked the Court to hold a hearing on its Motion for Summary Judgment, (ECF No. 44 at 16). A hearing is not necessary, as the Court can resolve the legal issues based upon the parties' memoranda, and no material facts are in dispute that are relevant to Phoenix's Motion.

[3] Plaintiffs also seek summary judgment on Phoenix's affirmative defense regarding Mr. Pulido's failure to promptly notify the police of the accident. (ECF No. 46 at 7-9). However, Phoenix has since withdrawn this affirmative defense, (*see* ECF No. 54), and this is now moot.

5

## II. ANALYSIS

### A. Standard

Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "when there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Jessup v. Miami-Dade Cnty.*, 440 F. App'x 689, 691 (11th Cir. 2011) (quotation marks and citation omitted). "An issue is 'genuine' when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof." *See Picardat v. City of Miami*, No. 15-cv-24305-GAYLES, 2017 WL 1251897 at * 1 (S.D. Fla. April 5, 2017) (citing *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014)). A "material" fact is one that, under the applicable law, might affect the outcome of the case. *See Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

At the summary judgment stage, the Court must determine the relevant facts and draw all inferences in favor of the nonmoving party "to the extent supportable by the record", and it must do so only for "genuine" disputes over material facts. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

B.  Mr. Pulido Was Occupying the Truck at the Time of the Accident

As mentioned, the dispositive issue is whether Mr. Pulido occupied the Truck when he was injured. The Policy defines "occupying" to mean "in, upon, getting in, on, out or off." Based upon the undisputed facts, the relevant question is whether Mr. Pulido's holding of the sprayer hose that was connected to the Truck means he was "on" or "upon" the Truck. Phoenix says the answer is no because the hose was not a part of the Truck, and Mr. Pulido was not near the Truck at the time of the accident, as measured by either time or distance; Phoenix also points out that he was engaged in a new activity, namely spraying pesticide. (ECF No. 44 at 7-13).

Phoenix relies on a series of cases in which the claimants had no physical contact with the vehicle at the time of injury.[4] In those cases, the question whether the claimant was "occupying" the vehicle was determined by "the relationship between the person and the vehicle, obviously of time and in distance …." *Young*, 978 So.2d at 852 (citing *Tanchuk*, 616 So.2d at 490-91). Phoenix contends those courts rejected a physical contact test. (ECF No. 44 at 13-14). I cannot agree. Rather, they used time and distance as a basis to determine occupancy precisely because there was no physical contact between the claimants and the insured vehicles.

---

[4] *See Auto-Owners Ins. Co. v. Young*, 978 So.2d 850 (Fla 1st DCA 2008) (decedent stood approximately 20 to 25 feet from insured tow truck or tow truck cable when accident occurred); *Progressive Am. Ins. Co. v. Tanchuk*, 616 So.2d 489 (Fla. 4th DCA 1993) (claimant stood between rear of insured tow truck and rear of another car when injured); *State Farm Mutual Auto Ins. Co.*, 203 So.3d 995, 998 (Fla. 2d DCA 2016) (claimant exited insured truck 30 minutes prior to being struck and was standing at least ten feet away from the vehicle when hit); *Fidelity & Cas. Co. of New York v. Garcia*, 368 So. 2d 1313, 1314 (Fla. 3d DCA 1979) (claimant crossed in front of insured truck and was walking toward her home when struck).

When a claimant does have physical contact with the vehicle at the time of an accident, "the cases invariably hold that that fact *alone* is sufficient to render the claimant an occupant", and courts do not consider the time or distance between the claimant and the vehicle. *Asnip v. Hartford Acc. & Indem. Co.*, 446 So.2d 1121, 1123 (Fla. 3d DCA 1984) (collecting cases) (emphasis supplied); *see also Dunlap v. U.S. Auto. Ass'n*, 470 So.2d 98, 100 (Fla. 1st DCA 1985) (recognizing that "mere physical contact with the vehicle is alone sufficient to satisfy the 'occupancy' requirement…"). Moreover, physical contact exists when the claimant is touching any part of the insured vehicle when injured. *See Ansip*, 446 So.2d at 1123 (claimant leaning against insured vehicle when struck was an occupant) (citing *Lumberman's Mut. Cas. Co. v. Norris*, 303 N.E. 2d 505 (1973) (person standing at side of the car holding onto side view mirror was an occupant)); *Laninfa v. Prudential Property & Cas. Ins.*, 656 So.2d 965, 965 (Fla. 5th DCA 1995) (claimant pushing disabled motorcycle alongside the road "was in continuous physical contact with the motorcycle, and thus was an occupant of it."); *Industrial Fire & Cas. Ins. Co. v. Collier*, 334 So.2d 148, 149 (Fla. 3d DCA 1976) (claimant changing a tire on insured vehicle when injured was "occupying" the vehicle).

The critical issue thus becomes whether the connected sprayer hose was part of the Truck. If so, Mr. Pulido's continuous physical contact with the sprayer hose was continuous physical contact with the Truck. For this, the Court turns to the Policy, which clearly states that vehicles with permanently attached spraying equipment are covered autos. (ECF No. 43-1 at 30) ("self-propelled vehicles with the following types of permanently attached equipment…will be considered 'autos'…[a]ir compressors, pumps

and generators, including spraying… equipment."). This begs the question: was the hose "permanently attached" to the Truck within the meaning of the Policy?

The Policy does not define the term "permanently attached" and the parties advocate different interpretations of the phrase. "Where the language in an insurance policy is subject to differing interpretations, the policy language should be construed liberally in favor of the insured and strictly against the insurer." *Bethel v. Sec. Nat'l Ins. Co.*, 949 So.2d 219, 233 (Fla. 3d DCA 2006) (quotation marks and citation omitted).

Phoenix argues that the hose reel system was not permanently attached because it was affixed to the Truck by nuts and bolts, and thus could be removed from the Truck. (ECF No. 55 at ¶ 8). Phoenix's approach would lead to the nonsensical result that any part of the Truck capable of removal is not, in fact, a part of the Truck. This would include nearly every truck component, such as the tires, doors and even the engine which, as a matter of common sense, are what anyone would consider permanently attached parts of the Truck.

The more reasonable construction of this phrase is that equipment which can be removed for repair, replacement or maintenance may nevertheless be "permanently attached" if the equipment must be affixed to the vehicle for the equipment to function. For example, equipment that is stored on a dolly in the bed of a truck is not "permanently attached" to the truck because the equipment will work when the dolly is removed and brought to the work site. By contrast, the spraying equipment connected to the affixed

water tanks will not function if the hose reel system is removed from the Truck.[5] The parties do not dispute that the hose reel was mounted to the Truck, one end of the hose was attached to the tanks, and a sprayer was attached to the other end of the hose, from which a water/chemical mix in the tanks was pumped through the hose and then sprayed. (ECF No. 48 at ¶ 10).

With this reasoning, I conclude that the sprayer hose was "permanently attached" to the Truck, making it part of the Truck as it is defined in the Policy. It is undisputed that Mr. Pulido was holding the sprayer hose at the time of his injury and, therefore, he was on or upon the Truck within the meaning of the Policy. (ECF Nos. 48 at ¶ 26; 55 at ¶¶ 15, 26).

No Florida court has determined the meaning of the term "occupying" under these facts. There is, however, a Florida appellate court decision that offers some guidance. In *Auto-Owners Ins. Co. v. Young*, the court held that the decedent was not occupying the insured tow truck at the time of his injury because, among other reasons, the decedent "was standing approximately twenty to twenty-five feet from the [attached] cable…when the accident occurred…[and] nearly five minutes had passed from the last time the decedent *had been touching the cable* until the moment when he was struck." 798 So.2d at 852 (emphasis supplied). Although *Young* did not address this question directly, it is evident that the plaintiff's lack of contact with the tow truck cable was important to its decision. The *Young* court's analysis supports my conclusion that, given the terms of the Policy here,

---

[5] This is evident from photographs of the Truck bed, where spraying equipment was located. (ECF No. 48-5 at 122-124).

10

physical contact with a "permanently attached" hose at the time of injury is sufficient to render the claimant an occupant of the vehicle.[6]

For the foregoing reasons, Mr. Pulido was, as a matter of law, "occupying a covered auto" within the meaning of the Policy. As such, Plaintiffs are "insureds" under the Policy for purposes of Uninsured Motorists coverage and are entitled to summary judgment on that issue. Phoenix concedes that much. (ECF No. 44 at 7) ("If [Mr. Pulido] was occupying the truck, he is an 'insured' for purposes of UM [Uninsured Motorists] coverage."). Accordingly, I recommend that the Court find that Plaintiffs are "insureds" for purposes of Uninsured Motorists coverage and deny Phoenix's Motion for Summary Judgment, and grant Plaintiff's Motion for Partial Summary Judgment on this issue.

### C. Summary Judgment is Not Appropriate on Phoenix's Affirmative Defense

Plaintiffs seek summary judgment on Phoenix's Eight Affirmative Defense that Mr. Pulido was comparatively negligent. (ECF No. 46 at 2, 10-11). This defense rests on Defendant's claim that Mr. Pulido violated company policy by, among other things, parking the Truck on the opposite side of the street from the home he was working on and laying the hose across the street. (ECF No. 24 at 12). Plaintiffs argue that Florida law provides a presumption that the driver of the vehicle who ran over the house was negligent,

---

[6] Phoenix relies upon a Georgia appellate court decision, *Clinton v. National Indem., Co.*, 153 Ga. App. 1980), which found that a firefighter who took a hose from the firetruck and was holding it at the time of his injury was not occupying the firetruck. I do not rely upon *Clinton* because it is distinguishable in significant ways. Most important, that Court's decision did not turn on the "permanently attached" policy language before this Court. Moreover, a key fact in *Clinton* was that the firefighter had not entered the firetruck because he drove to the scene in his own vehicle.

not Mr. Pulido, and that Phoenix stands in the shoes of that driver.[7] (ECF No. 46 at 10-11). The Court need not reach this issue because, even if the presumption applies, summary judgment is not appropriate. The facts necessary to determine whether the presumption of negligence can be rebutted, and whether Mr. Pulido was negligent as Phoenix asserts, are hotly contested. For example, there is conflicting testimony about whether Mr. Pulido followed company policy and whether safety cones were available that Mr. Pulido should have used to mark the hose. *Compare e.g.,* (ECF No. 55 at ¶ 54) ("Katie Rourke, All Florida Pest Control's Operations Manager, testified that employees were to park on the same side of the street as the home they were servicing to avoid dragging the hose across the street, for safety reasons.") *with* (ECF No. 57 at ¶ 54) (Plaintiff relies on employee testimony to assert that "as pattern and practice, All Florida Pest Control did not follow or enforce their company policies and prioritized getting the work done over worker safety."); *compare* (ECF No. 55 at ¶ 57) (employees testified that "[t]he All Florida Pest Control trucks were all equipped with safety cones.") *with* (ECF No. 48-2 at 56:3-4, *Deposition of Frank Pulido*) ("Q: Did the truck you were driving on September 27, '17 have parking cones in it? A: No").[8] Given the existence of conflicting evidence regarding comparative fault, I

---

[7] In particular, Plaintiffs rely on the following principle stated by the Florida Supreme Court: "when a vehicle collides with an object ahead of it, including the rear of a leading vehicle, there is a presumption of negligence on the part of the overtaking or following vehicle." *Clampitt v. DK Spencer Sales*, 786 So.2d 570, 573 (Fla. 2001).

[8] Plaintiffs' repeated assertion that "this dispute is not over a fact 'material' to the…comparative fault [issue], (ECF No. 57 at 4-8) is not persuasive because a material fact is merely one that "*might* affect the outcome of the case." *See Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (emphasis supplied). The facts referenced above easily meet that standard.

recommend that the Court deny Plaintiff's Motion for Partial Summary Judgment on Phoenix's Eighth Affirmative defense.

### III. RECOMMENDATION

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that the Court **DENY** Defendant's Motion for Summary Judgment, (ECF No. 44) and **GRANT IN PART** Plaintiff's Motion for Partial Summary Judgment, (ECF No. 46), as set forth herein.

### IV. OBJECTIONS

**No later than seven days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Kathleen M. Williams, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).`

RESPECTFULLY RECOMMENDED in Miami, Florida this 30th day of November 2022.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:   The Honorable Kathleen M. Williams
      Counsel of record